UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ATLANTIC DEVELOPMENT CORP.,<br><br>                      Plaintiff,<br><br>      -against-<br><br><br>TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA,<br><br>                      Defendant. | Case No. 1:21-CV-09670<br><br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANT'S <u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

USERY & ASSOCIATES
485 Lexington Avenue, 6th Floor
New York, NY 10017
(917) 778-6680

*Attorneys for Defendant*
*Travelers Casualty Insurance Company of America*

# **TABLE OF CONTENTS**

| | |
|---|---:|
| **TABLE OF AUTHORITIES** | ii |
| **PRELIMINARY STATEMENT** | 1 |
| **STATEMENT OF MATERIAL FACTS** | 2 |
|     **A. The Travelers Policy** | 2 |
|     **B. The Flatbush Project and Tender Status** | 3 |
|     **C. The Alleged Accident In The Underlying Action** | 3 |
|     **D. Procedural History In The Underlying Action** | 5 |
| **LEGAL STANDARD** | 5 |
| **ARGUMENT** | 6 |
| **CONCLUSION** | 11 |

# **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...................................................................................................... 5

*Dalberth v. Xerox Corp.*,
766 F.3d 172 (2d Cir. 2014)........................................................................................... 5

*Seiden Assocs. v. ANC Holdings, Inc.*,
959 F.2d 425 (2d Cir. 1992)........................................................................................... 6

*Zurich Am. Ins. v. Harleysville Ins. Co.*,
194 F.Supp.3d 253 (S.D.N.Y. July 7, 2016) ............................................................... 5, 6

*Fireman's Fund Ins. Co. v. OneBeacon Ins. Co.*,
495 F. Supp. 3d 293 (S.D.N.Y. 2020)........................................................................... 5

*Starr Indem. & Liab. Co. v. Excelsior Ins. Co.*,
516 F. Supp. 3d 337 (S.D.N.Y. 2021)........................................................................... 5

*LM Ins. Corp. v. Fed. Ins. Co.*,
585 F.Supp. 3d 493 (S.D.N.Y. 2022)............................................................................ 6

*Century Sur. Co. v. Franchise Contractors, LLC*,
No. 14 CIV. 277 (NRB), 2016 WL 1030134 (S.D.N.Y. Mar. 10, 2016) ..................... 6

*Worth Const. Co. v. Admiral Ins. Co.*,
888 N.E.2d 1043 (2008) ............................................................................................ 7, 8

*Port Auth. of New York & New Jersey v. Brickman Grp. Ltd., LLC*,
181 A.D.3d 1 (1st Dep't 2019) ……………………………………..…….......  7, 8, 9, 10

*Am. Bridge Co. v. Acceptance Ins. Co.*,
No. 8621/99, 2005 WL 6071460 (N.Y. Sup. Ct. Nov. 14, 2005)………………………….7

*Am. Bridge Co. v. Acceptance Ins. Co.*,
40 A.D.3d 666 (2d Dep't 2007) ..……………………………………………..…………7

*Daily News, LP v. OCS Sec., Inc.*,
280 A.D.2d 576 (2d Dep't 2001) ……………………………………………………….7

*Consol. Edison Co. of New York v. U.S. Fid. & Guar. Co.*,
263 A.D.2d 380 (1st Dep't 1999)……………………………………………………….7

*Nuzzo v. Griffin Tech. Inc.*,
222 A.D.2d 184 (1996) ………………………………………………………………………..7

*Liberty Mut. Fire Ins. Co. v. E.E. Cruz & Co.*,
475 F. Supp. 2d 400 (S.D.N.Y. 2007) ………………………………………………………7

*Regal Const. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
930 N.E.2d 259 (2010) …………………………………………………………………..…7

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................................ 7

Local Civil Rule 56.1 ............................................................................................................... 2

**PRELIMINARY STATEMENT**

Plaintiff Atlantic State Development Corp. ("Atlantic") has not met its burden to show its entitlement to summary judgment. Defendant Travelers Casualty Insurance Company of America ("Travelers"), on its cross-motion, is entitled to summary judgment based on the evidence. The accident alleged in the underlying personal injury action titled *Uzzilia v. Jo-Tone Carpet, Inc., et al.* in The Supreme Court of the State of New York, County of Bronx, bearing Index No. 23858/2016E (the "Underlying Action") was not connected to Travelers' insureds' work and operations to afford Atlantic indemnity as an additional insured under Travelers' commercial general liability policy.

Claimant in the Underlying Action, Nicholas Uzzilia ("Uzzilia") claims that he was injured on July 12, 2013 at a project located at Blink Fitness, 833 Flatbush Avenue, Brooklyn, NY (the "Flatbush Project"). Uzzilia, an Atlantic employee, alleges he was working at the Flatbush Project when tiles fell on him during a delivery. Travelers' insured Gray Fox Flooring, LLC ("Gray Fox") was retained by Atlantic to perform flooring installation at the Flatbush Project.

Uzzilia was receiving the deliveries within the scope of his duties as an Atlantic employee when his accident occurred. Gray Fox and its subcontractors were not onsite at the Flatbush Project at the time of Uzzilia's accident. There is no evidence Gray Fox, or its subcontractors, ordered or delivered the tiles which allegedly caused Uzzilia's accident. Moreover, the owner of the Flatbush Project, Blink Fitness ("Blink") made certain requests and decisions, without any input from Gray Fox, which led to the delivery of the tiles present at Uzzilia's accident. Uzzilia's own actions, in conjunction with Blink's role in the delivery, break any connection between Uzzilia's accident and Gray Fox's work and operations. Accordingly, Travelers opposes Atlantic's summary judgment

motion and cross-moves for a declaration that Travelers does not owe Atlantic a duty to indemnify in the Underlying Action.

## STATEMENT OF MATERIAL FACTS

The facts set forth in Travelers' Counter-Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("L. Civ. R. 56.1 Counter-Statement"), are incorporated by reference.[1]

### A. The Travelers Policy

Travelers issued a commercial general liability policy to Gray Fox bearing policy number I-680-2399M123-ACJ-13 for the policy period of April 4, 2013 to April 4, 2014 (the "Travelers Policy"). *See* L. Civ. R. 56.1 Counter-Statement at ¶¶ 29-30. The Travelers Policy contained a Blanket Additional Insured endorsement under form CG D1 05 04 94 which states that:

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> 1. WHO IS AN INSURED (SECTION II) is amended to include as an insured any person or organization (called hereafter "additional insured") whom you [Gray Fox] have agreed in a written contract, executed prior to loss, to name as additional insured, but only with respect to liability arising out of "your work" or your ongoing operations for that additional insured performed by you or for you.

*See id.* at ¶ 30.

The Travelers Policy contains the following definition of "your work":

> 22. "Your work":
>
> a. Means:
>
> (1) Work or operations performed by you or on your behalf; and

---

[1] Because certain exhibits to the Boyce Affidavit filed on the docket were broken up into separate parts, thereby giving certain exhibits inconsistent docket numbers, citations to exhibits to the Boyce Affidavit will refer to the docket entry for convenient reference.

2

>(2) Materials, parts or equipment furnished in connection with such work or operations.
>
>b. Includes:
>
>(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
>
>(2) The providing of or failure to provide warnings or instructions.

D.E. 20-21 at bates number TRV01578.

### B. The Flatbush Project and Tender Status

The owner of the Flatbush Project, Blink, retained Atlantic as the general contractor for the Flatbush Project to "build out" a Blink Fitness facility at 833 Flatbush Avenue, Brooklyn, NY. L. Civ. R. 56.1 Counter-Statement at ¶ 2; D.E. 20-1. Through a purchase order dated April 9, 2013 (the "Purchase Order"), Atlantic hired Gray Fox to perform flooring installation at the Flatbush Project. *See id.* at ¶¶ 3-4. Gray Fox retained sub-subcontractors to perform the work. *See id.* at ¶¶ 8-11. Gray Fox hired Jo Tone Carpet to receive all purchase material into their warehouse, deliver the materials to the Flatbush Project and install them. *Id.* at ¶ 11.

Based on the Travelers Policy, the Purchase Order, and pleadings from the Underlying Action, Travelers agreed to defend Atlantic in the Underlying Action "subject to terms and conditions of the policy and reservations of rights…" *Id.* at ¶¶ 34-35.

### C. The Alleged Accident In The Underlying Action

In the Underlying Action, Uzzilia alleges that he was injured on July 12, 2013 at the Flatbush Project while in the course of his employment with Atlantic. *Id.* at ¶ 6. Uzzilia was working at the Flatbush Project when "a load of tiles fell from an [*sic*] secured safety device and struck his body." *Id.* at ¶ 27. Uzzilia was at the Flatbush Project in the course of his employment

as Atlantic's supervisor, receiving a delivery of tiles when the accident occurred. *See id.* at ¶¶ 6, 43-44.

It was within the scope of Atlantic's duties as general contractor to coordinate and receive deliveries of materials to the Flatbush Project. *Id.* at ¶¶ 43-44. Prior to July 12, 2013, Blink asked Gray Fox to re-route tiles originally scheduled to be delivered to the Flatbush Project to a White Plains location. *Id.* at ¶¶ 13-14. Gray Fox agreed to Blink's request and arranged for Jo Tone to deliver the tiles to White Plains from Jo Tone's warehouse. *Id.* at ¶ 16. Replacement tiles were ultimately delivered to the Flatbush Project. *Id.* at ¶¶ 14-15. It is undetermined who ordered and delivered the replacement tiles. *Id.* at ¶¶ 40, 49-50. E-mail correspondence dated July 10, 2013 between Blink and Atlantic were exchanged regarding the delivery of the replacement tiles. *Id.* at ¶ 52; **Exh. "G"** to Wong Decl. Gray Fox personnel were not on the July 10, 2013 e-mails. *See* **Exh. "G"** to Wong Decl.

Uzzilia's accident occurred during the delivery of the replacement tiles. *See* L. Civ. R. 56.1 Counter-Statement at ¶ 6. Gray Fox and its subcontractors did not order or deliver the replacement tiles that caused Uzzilia's accident. *Id.* at ¶¶ 46-47. Gray Fox did not receive documentation regarding delivery of the replacement tiles. *Id.* at ¶ 47. Gray Fox and its subcontractors were not present at the Flatbush Project at the time of the accident. *Id.* at ¶ 48. Gray Fox did not perform work at the White Plains location and was hired to only work at the Flatbush Project. *Id.* at ¶ 45. Generally, a bill of lading would be generated to indicate who made a delivery to the Flatbush Project, but a bill of lading has not been produced in the Underlying Action nor in this instant action. *Id.* at ¶¶ 41-42.

### D. Procedural History In The Underlying Action

Gray Fox and other parties in the Underlying Action moved for summary judgment and the court in the Underlying Action issued a decision on the parties' motions. *Id.* at ¶ 37. The state court found there are triable issues of fact as to Gray Fox's role in the delivery of the replacement tiles. *See id.* at ¶ 50; D.E. 20-4. The state court granted Uzzilia's motion for summary judgment as to his Labor Law §§ 240(1) and 241(6) claims against Blink and EIB Fitness LLC. L. Civ. R. 56.1 Counter-Statement at ¶ 49; D.E. 20-4. Uzzilia's motion for summary judgment against Gray Fox was denied. L. Civ. R. 56.1 Counter-Statement at ¶ 50; D.E. 20-4. Uzzilia discontinued his claims against Gray Fox with prejudice, but the underlying defendants' claims against Gray Fox remain in a separate suit. L. Civ. R. 56.1 Counter-Statement at ¶¶ 43-44; 48. There has been no finding that Gray Fox owes any entity contractual indemnity. *Id.* at ¶ 51. There is no evidence that Gray Fox or its subcontractors ordered or delivered the replacement tiles. *See id.* at ¶¶ 48, 50-51.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of "demonstrating the absence of any genuine dispute as to a material fact rests with the moving party." *Zurich Am. Ins. v. Harleysville Ins. Co.*, 194 F.Supp.3d 253, 257 (S.D.N.Y. July 7, 2016).

"An issue of fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Dalberth v. Xerox Corp.*, 766 F.3d 172, 182 (2d Cir. 2014), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Under New York law, insurance policies are interpreted according to general rules of contract interpretation. *Fireman's Fund Ins. Co. v. OneBeacon Ins. Co.*, 495 F. Supp. 3d 293, 300 (S.D.N.Y. 2020)

(citations omitted). "When the dispute hinges on contract interpretation, 'summary judgment may be granted when [the contract's] words convey a definite and precise meaning absent any ambiguity." *Zurich Am. Ins.*, 194 F. Supp.3d 257, *quoting Seiden Assocs. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992).

## ARGUMENT

Atlantic contends that the "arising out of" language in the additional insured endorsement of the Travelers Policy does not require a negligence finding and the mere fact that Gray Fox was contracted to install flooring tiles at the Flatbush Project automatically establishes Travelers' duty to indemnify Atlantic in the Underlying Action. Atlantic's arguments, however, overlook the prerequisite fact-finding that is necessary to evaluate a duty to indemnify, even under an "arising out of" endorsement. The particular facts here foreclose indemnity for Atlantic.

The duty to indemnify is measured by the "actual basis for the insured's liability" rather than "the allegations of [the] pleadings." *Starr Indem. & Liab. Co. v. Excelsior Ins. Co.*, 516 F. Supp. 3d 337, 348 (S.D.N.Y. 2021) (citations omitted). A duty to indemnify, unlike the duty to defend, "does not turn on the pleadings, but rather on whether the loss*, as established by the facts*, is covered by the policy." *LM Ins. Corp. v. Fed. Ins. Co.*, 585 F.Supp. 3d 493, 501 (S.D.N.Y. 2022) (emphasis added) (citations omitted) (finding further discovery in the underlying case is needed to evaluate if an accident arises out of a tenant's operations to adjudicate the tenant insurer's duty to indemnify); *see also Century Sur. Co. v. Franchise Contractors, LLC*, No. 14 CIV. 277 (NRB), 2016 WL 1030134, at *4 (S.D.N.Y. Mar. 10, 2016) (internal quotations omitted).

An "arising out of" additional insured endorsement, while broad, is not limitless. To establish additional insured coverage under an endorsement containing "arising out of" language, there needs to be some causal relationship between the injury and the risk for which coverage is

provided. *See Worth Const. Co. v. Admiral Ins. Co.*, 888 N.E.2d 1043, 1045 (2008). In evaluating an "arising out of" endorsement, an insurer is not obligated to indemnify an additional insured where an accident in an underlying personal injury action did not occur within the operations of the named insured. *See Port Auth. of New York & New Jersey v. Brickman Grp. Ltd., LLC*, 181 A.D.3d 1 (1st Dep't 2019); *see also, Am. Bridge Co. v. Acceptance Ins. Co.,* No. 8621/99, 2005 WL 6071460 (N.Y. Sup. Ct. Nov. 14, 2005) *aff'd. Am. Bridge Co. v. Acceptance Ins. Co.*, 40 A.D.3d 666 (2d Dep't 2007) (affirming trial court decision that Hannibal and its insurer Acceptance has no obligation to indemnify American Bridge under Acceptance's liability policy where plaintiff was injured while performing operations of American Bridge).

The cases cited by Atlantic further demonstrate that an arising out of endorsement requires a direct nexus between the injury and the named insured's general operations and actions to establish a duty to indemnify an additional insured; that direct nexus is not present here. *See Daily News, LP v. OCS Sec., Inc.*, 280 A.D.2d 576 (2d Dep't 2001) (finding additional insured coverage where the named insured's employee had the *direct responsibility* for the elevator that caused the underlying tort); *Consol. Edison Co. of New York v. U.S. Fid. & Guar. Co.*, 263 A.D.2d 380 (1st Dep't 1999) (finding additional insured coverage where the named insured was *directly instructed to perform* the roadway resurfacing at the accident location); *Nuzzo v. Griffin Tech. Inc.*, 222 A.D.2d 184 (1996) (finding additional insured coverage where plaintiffs' injuries were caused by equipment *directly supplied and serviced* by the named insured and used with the named insured's express instructions); *see also Liberty Mut. Fire Ins. Co. v. E.E. Cruz & Co.*, 475 F. Supp. 2d 400 (S.D.N.Y. 2007) (finding additional insured coverage when damages occurred to the named insured's own installations and equipment that are embedded into the location without a discussion or finding of intervening instructions by a third party); *Regal Const. Corp. v. Nat'l Union Fire Ins.*

7

*Co. of Pittsburgh, PA*, 930 N.E.2d 259 (2010) (finding the named insured owed additional insured coverage where the injury was sustained by the named insured's own employee performing his work duties).

In *Worth Const. Co. v. Admiral Ins. Co.,* the Court of Appeals evaluated an additional insured endorsement, much like the one in this instant matter, which stated that the plaintiff Worth is an additional insured "only with respect to liability arising out of [defendant's insured, Pacific's] operations." *Worth Const. Co.*, 10 N.Y.3d at 415. The court found that Worth was not entitled to defense and indemnification and explained that:

> Here, it is evident that the general nature of Pacific's operations involved the installation of a staircase and handrails. An entirely separate company was responsible for applying the fireproofing material. At the time of the accident, Pacific was not on the job site, having completed construction of the stairs, and was awaiting word from Worth before returning to affix the handrails.

*Id.*, 10 N.Y.3d at 416.

In *Port Auth. of New York & New Jersey v. Brickman Grp. Ltd., LLC*, the Port Authority sought indemnification as an additional insured from the Brickman Group's insurer, ACE American Insurance Company under a similar "arising out of" endorsement. In the underlying tort matter, sprinklers which were part of an irrigation system maintained by the Brickman Group discharged and froze into ice, resulting in a multi-vehicle collision. *Port Auth. of New York & New Jersey*, 181 A.D.3d at 7. Brickman Group's winterization subcontractor was performing work around the time of the accident. *Id.* The First Department explained that "since the plaintiffs in the underlying actions were not employees of the named insured, Brickman Group, or of any subcontractor of Brickman Group [,] [t]he irrigation system maintained by Brickman Group therefore 'was merely the situs of the accident' and there was [no] connection between [the]

8

accident and the risk for which coverage [under Endorsement No. 17] was intended." *Port Auth. of New York & New Jersey*, 181 A.D.3d at 13–14 (citations omitted).

Here, much like in *Worth* and *Port Auth. of New York & New Jersey*, the record shows no connection between Uzzilia's incident and Gray Fox's work and operations. While Gray Fox and its subcontractors may have installed the replacement tiles after Uzzilia's accident, multiple factors break the connective chain between the replacement tiles and Gray Fox's work and operations at the Flatbush Project. The replacement tiles were not delivered by Gray Fox, nor was the delivery performed for Gray Fox. L. Civ. R. 56.1 Counter-Statement at ¶¶ 46-47. Gray Fox did not make the decision to redirect the tiles, and there is no determination that Gray Fox ordered, delivered, authorized, controlled, directed, requested, or in any way played a role in having the replacement tiles be present at the time of Uzzilia's accident. *See id.* at ¶¶ 13-14, 40, 46-47, 50; *see also* D.E. 20-4.

Blink, on its own accord, asked Gray Fox to divert the delivery of the original tiles to the White Plains location. L. Civ. R. 56.1 Counter-Statement at ¶¶ 13-14. Although it is undetermined who ultimately ordered and delivered the replacement tiles to the Project, it was Blink that decided to reroute the original tiles and there is no evidence that Gray Fox ordered or delivered the replacement tiles that allegedly injured Uzzilia. *See id.* at ¶¶ 13-14, 41-42, 46-47, 52; *see also* **Exh. "G"** to Wong Decl. Indeed, Gray Fox did not even receive documentation concerning delivery of the replacement tiles and was not part of the correspondence between Blink and Atlantic regarding the delivery of the replacement tiles. *Id.* at ¶¶ 47, 52; *see also* **Exh. "G"** to Wong Decl.

Additionally, Gray Fox was only retained to perform the flooring installation at the Flatbush Project, and the White Plains location was not part of Gray Fox's scope of work. *Id.* at ¶ 45. Without Blink's independent decision to redirect the original tiles to White Plains, the

replacement tiles would not have been present at the time of Uzzilia's accident. There is no evidence or finding that Gray Fox, or any of its subcontractors, made any decision concerning the ordering, timing, and delivery of the replacement tiles. In other words, there is no evidence in the record that "but for" conduct by Gray Fox or subcontractors, the tiles would not have been present.

Furthermore, it is undisputed that Uzzilia was present during the delivery of replacement tiles within the scope of his employment with Atlantic when the underlying accident occurred. *Id.* at ¶ 6. He was performing his duties as an Atlantic employee to "receive" the tile delivery. *Id.* at ¶¶ 6, 43. Uzzilia, as an Atlantic employee, had the authority to correct unsafe work practices, including deliveries. *Id.* at ¶¶ 44. Gray Fox and its sub-contractors were not onsite at the time of Uzzilia's accident *Id.* ¶ at 48. There is no evidence that Gray Fox and its sub-contractors directed, authorized, or otherwise controlled Uzzilia's actions during the delivery process. *See id.* at ¶¶ 48, 50-51. Although the replacement tiles were installed by Gray Fox after the accident, there is clear evidence that other separate and independent entities put the replacement tiles into the "stream" of events leading to the accident, without any input or direction from Gray Fox. *See e.g. Worth Const. Co.*, 10 N.Y.3d at 416; *Port Auth. of New York & New Jersey*, 181 A.D.3d at 13–14.

Thus, Blink and Atlantic essentially acted as intervening causes, breaking the connection between the replacement tiles and Gray Fox's work and operations. There are no facts that directly connect Gray Fox to Uzzilia's accident, particularly given intervening factors outside the scope of Gray Fox's work and operations. *See* L. Civ. R. 56.1 Counter-Statement at ¶¶ 50-51. For that reason, Travelers is entitled to summary judgment finding that it has no indemnity obligation toward Atlantic. Even if that were not so, Atlantic has not sufficiently met its burden to show the involvement and overall connection to the delivery of the replacement tiles by Gray Fox to prevail on its own motion.

## **CONCLUSION**

Accordingly, it is respectfully requested that Atlantic's summary judgment motion be denied and that Travelers' instant cross-motion be granted and for all other relief that the court finds appropriate.

Dated: New York, New York
November 22, 2022

USERY & ASSOCIATES

By:    /s/ Tung Sing Wong
Tung Sing Wong
*Attorneys for Travelers Property Casualty Company of America*
Mailing Address:
P.O. Box 2996
Hartford, CT 06104
T. (917) 778-6680
F. (844) 571-3789
E. twong2@travelers.com